JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

APPENDIX H

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
AFSCME District Council 47 H&W Fund, Philadelphia Firefighers Union Local 22 H&W Fund and National Council of Firemen and Oilers Local 1201 H&W Fund

## DEFENDANTS
Purdue Pharma, L.P. and The Purdue Frederick Company, Inc.

(b) County of Residence of First Listed Plaintiff     Philadelphia
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant     Fairfield
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
**Stewart L. Cohen, Esquire**
**Cohen, Placitella & Roth, P.C.**
**2001 Market Street – Suite 2900**
**Philadelphia, PA 19103 – 215-567-3500**

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

' 1 U.S. Government        Plaintiff

' 3 Federal Question
(U.S. Government Not a Party)

' 2 U.S. Government        Defendant

X 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | X 1 | ' 1 | Incorporated or Principal Place of Business In This State | ' 4 | 4 |
| Citizen of Another State | ' 2 | X 2 | Incorporated and Principal Place of Business In Another State | ' 5 | ' 5 |
| Citizen or Subject of a Foreign Country | ' 3 | ' 3 | Foreign Nation | ' 6 | ' 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ' 110 Insurance | **PERSONAL INJURY** | ' 610 Agriculture | ' 422 Appeal 28 USC 158 | ' 400 State Reapportionment |
| ' 120 Marine | ' 310 Airplane | ' 620 Other Food & Drug | ' 423 Withdrawal | ' 410 Antitrust |
| ' 130 Miller Act | ' 315 Airplane Product | ' 625 Drug Related Seizure | 28 USC 157 | ' 430 Banks and Banking |
| ' 140 Negotiable Instrument | Liability | of Property 21 USC 881 | | ' 450 Commerce |
| ' 150 Recovery of Overpayment | ' 320 Assault, Libel & | ' 630 Liquor Laws | **PROPERTY RIGHTS** | ' 460 Deportation |
| & Enforcement of Judgment | Slander | ' 640 R.R. & Truck | ' 820 Copyrights | ' 470 Racketeer Influenced and |
| ' 151 Medicare Act | ' 330 Federal Employers' | ' 650 Airline Regs. | ' 830 Patent | Corrupt Organizations |
| ' 152 Recovery of Defaulted | Liability | ' 660 Occupational | ' 840 Trademark | ' 480 Consumer Credit |
| Student Loans | ' 340 Marine | Safety/Health | | ' 490 Cable/Sat TV |
| (Excl. Veterans) | ' 345 Marine Product | ' 690 Other | | ' 810 Selective Service |
| ' 153 Recovery of Overpayment | Liability | **LABOR** | **SOCIAL SECURITY** | ' 850 Securities/Commodities/ |
| of Veteran's Benefits | ' 350 Motor Vehicle | ' 710 Fair Labor Standards | ' 861 HIA (1395ff) | Exchange |
| ' 160 Stockholders' Suits | ' 355 Motor Vehicle | Act | ' 862 Black Lung (923) | ' 875 Customer Challenge |
| ' 190 Other Contract | Product Liability | ' 720 Labor/Mgmt. Relations | ' 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ' 195 Contract Product Liability | ' 360 Other Personal | ' 730 Labor/Mgmt.Reporting | ' 864 SSID Title XVI | ' 890 Other Statutory Actions |
| ' 196 Franchise | Injury | & Disclosure Act | ' 865 RSI (405(g)) | ' 891 Agricultural Acts |
| | | ' 740 Railway Labor Act | **FEDERAL TAX SUITS** | ' 892 Economic Stabilization Act |
| | | ' 790 Other Labor Litigation | ' 870 Taxes (U.S. Plaintiff | ' 893 Environmental Matters |
| | | ' 791 Empl. Ret. Inc. | or Defendant) | ' 894 Energy Allocation Act |
| | | Security Act | ' 871 IRS—Third Party | ' 895 Freedom of Information |
| | | | 26 USC 7609 | Act |

**PERSONAL INJURY**
' 362 Personal Injury -
Med. Malpractice
' 365 Personal Injury -
Product Liability
' 368 Asbestos Personal
Injury Product
Liability
**PERSONAL PROPERTY**
' 370 Other Fraud
' 371 Truth in Lending
' 380 Other Personal
Property Damage
X 385 Property Damage
Product Liability

| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS |
|---|---|---|
| ' 210 Land Condemnation | ' 441 Voting | ' 510 Motions to Vacate |
| ' 220 Foreclosure | ' 442 Employment | Sentence |
| ' 230 Rent Lease & Ejectment | ' 443 Housing/ | **Habeas Corpus:** |
| ' 240 Torts to Land | Accommodations | ' 530 General |
| ' 245 Tort Product Liability | ' 444 Welfare | ' 535 Death Penalty |
| ' 290 All Other Real Property | ' 445 Amer. w/Disabilities - Employment | ' 540 Mandamus & Other |
| | ' 446 Amer. w/Disabilities - Other | ' 550 Civil Rights |
| | ' 440 Other Civil Rights | ' 555 Prison Condition |

' 900 Appeal of Fee Determination Under Equal Access to Justice
' 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

X 1 Original Proceeding
' 2 Removed from State Court
' 3 Remanded from Appellate Court
' 4 Reinstated or Reopened
' 5 Transferred from another district (specify)
' 6 Multidistrict Litigation
' 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC 1332

Brief description of cause: **Claim for costs from overpromotion of Oxycontin**

## VII. REQUESTED IN COMPLAINT:
X CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   X Yes   _ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE
DOCKET NUMBER

DATE   5/14/07

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

APPENDIX I

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| AFSCME District Council 47 H&W Fund, Philadelphia Firefighers Union Local 22 H&W Fund and National Council of Firemen and Oilers Local 1201 H&W Fund | : : : | CIVIL ACTION |
| v. | : : | |
| Purdue Pharma, L.P. and The Purdue Frederick Company, Inc. | : : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.     ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.     ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.     ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)     ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.     (X)

| 5/14/07 | William D. Marvin | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-567-3500 | 215-567-6019 | wmarvin@cprlaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, DISTRICT COUNCIL 47 HEALTH AND WELFARE FUND 1606 Walnut St. Philadelphia, PA  19103 | CIVIL ACTION<br><br>No. |
| and | |
| PHILADELPHIA FIREFIGHTERS UNION LOCAL NO. 22 HEALTH & WELFARE FUND 415-427 North 5th Street Philadelphia, PA  19123 | |
| and | |
| NATIONAL COUNCIL OF FIREMEN AND OILERS, LOCAL 1201 HEALTH AND WELFARE FUND 455 North 5th Street Philadelphia, PA  19123 | |
| v. | |
| PURDUE PHARMA L.P. One Stamford Forum 201 Tresser Blvd. Stamford, CT  06901-3431 | |
| and | |
| THE PURDUE FREDERICK COMPANY INC. One Stamford Forum 201 Tresser Blvd. Stamford, CT  06901-3431 | |

COMPLAINT - CLASS ACTION
Jury Trial Demanded

## IDENTIFICATION OF PARTIES

1.     The American Federation of State, County and Municipal
Employees, District Council 47 Health and Welfare Fund
["District Council 47 Fund"] is a health and welfare trust fund
having an office and place of business at 1606 Walnut Street,
Philadelphia, PA 19103.

2.     The Philadelphia Firefighters Union Local No. 22
Health and Welfare Fund ["Local 22 Fund"] is a health and
welfare trust fund having an office and place of business at
415-427 North 5th Street, Philadelphia, PA 19123.

3.     The National Council of Firemen and Oilers Local 1201
Health and Welfare Fund ["Local 1201 Fund"], is a health and
welfare trust fund having an office and place of business at 455
North 5th Street, Philadelphia, PA 19123.

4.     Defendant Purdue Pharma L.P., is a business entity in
the form of a privately held limited partnership, that maintains
offices and its principal place of busienss at One Stamford
Forum, 201 Tresser Blvd., Stamford, CT  06901-3431.

5.     Defendant The Purdue Frederick Company, Inc., is a
business corporation organized under the laws of the state of
New York, that maintains offices and its principal place of
busienss at One Stamford Forum, 201 Tresser Blvd., Stamford, CT
06901-3431.  On information and belief, defendant Purdue

Frederick is the general partner of defendant Purdue Pharma, LP.
Defendants acted jointly in all the matters alleged herein, and
are collectively referred to as "Purdue."

6.    Defendants regularly conduct business within the
Commonwealth of Pennsylvania and the Eastern District of
Pennsylvania, but are not citizens of the Commonwealth of
Pennsylvania.

7.    The acts and omissions of each Defendant, as set forth
herein, were committed by its agents, officers and employees,
acting within the course and scope of their office, employment
or agency.

## JURISDICTION

8.    This Court has subject matter jurisdiction of this
action pursuant to the Class Action Fairness Act of 2005, 28
U.S.C. § 1332(d)(2), in that there is diversity of citizenship
between the named Plaintiffs and members of the Proposed Class
and Defendants, and the aggregate amount in controversy exceeds
$5 million.

9.    Venue is proper in this district in that each
Defendant is subject to personal jurisdiction in this district
because of its regular business activities within this district.

## COMMON FACTS

10.   The claims in this action arise from the defendants'
marketing and promotion of OxyContin, a controlled-release form
of a Schedule II narcotic drug manufactured by defendant Purdue
Pharma L.P.  Purdue began selling Oxycontin in 1995, for the
treatment of moderate-to-severe pain lasting more than a few
days.

11.   The District Council 47 Fund provides various benefits
for employees of the City of Philadelphia who are affiliated
with the American Federation of State, County and Municipal
Employees, District Council 47, including the dependents of
their members, as well as retired employees and their
dependents.

12.   The Local 1201 Fund provides various benefits for
employees of the School District of Philadelphia, who are
members of the National Council of Firemen and Oilers, Local
1201, including the dependents of their members, as well as
retired members and their dependents.

13.   The Local 22 Fund provides various benefits for
employees of the Philadelphia Fire Department who are members of
the International Association of Firefighters Union Local No.
22, including the dependents of their members, as well as
retired members and their dependents.

14.    The benefits provided by each of the Plaintiff Funds include prescription drug benefit plans and coverage, which are self-insured by the respective Funds and administered through a Prescription Benefit Manager ["PBM"].  The Funds also provide coverage for medical benefit plans.

15.    During the relevant time period, the Funds purchased Oxycontin for use by their members or retirees, and/or reimbursed members or retirees for their purchases of OxyContin, The Funds were injured as a result of the unlawful conduct alleged herein, which cause unnecessary and excessive usage of OxyContin.

16.    The Funds' plans only permit payment for prescriptions which are medically necessary, and in accordance with medically recognized uses.  The plans seek to regulate and control the cost of prescription drugs by methods such as use of approved formularies and encouraging use of generic drugs.

17.    The Funds and their PBMs rely on persons causing claims to be submitted for payment, to recognize and honor the permissible scope of reimbursement and to obey the governing law and regulations in activities that cause such claims.

18.    The Purdue Defendants have aggressively exploited their position, their superior knowledge of their product's characteristics and their knowledge that payors such as

5

Plaintiffs relied on suppliers and sellers to comply with the governing regulation, by means of direct, illegal programs of promotion of use of non-medically necessary, non-indicated uses.

19.   In Pennsylvania, Purdue has marketed Oxycontin, its powerful narcotic medication pain for non-medically necessary uses including use for the treatment of moderate pain.  Further, each Defendant has intentionally misrepresented to prescribers who treat Fund participants that Oxycontin had less potential for abuse and addiction than other forms of narcotic medication.

20.   From the outset of the OxyContin marketing campaign, Purdue promoted the drug to physicians for noncancer pain conditions that can be caused by arthritis, injuries, and chronic diseases, in addition to cancer pain, and promoted the drug in a manner which increased the potential for abuse and diversion of the medication for improper and illegal purposes.

21.   Purdue conducted an extensive campaign to market and promote OxyContin that focused on encouraging physicians, including those in primary care specialties, to prescribe the drug for noncancer as well as cancer pain.

22.   Purdue directed its sales representatives to focus on the physicians in their sales territories who were high opioid prescribers.

23.   To implement its OxyContin campaign, Purdue significantly increased its sales force and used multiple promotional approaches.

24.   OxyContin sales and prescriptions grew rapidly following its market introduction, with the growth in prescriptions for noncancer pain outpacing the growth in prescriptions for cancer pain.

25.   The active ingredient in OxyContin tablets is oxycodone, a compound that is similar to morphine and is also found in oxycodone combination pain relief drugs such as Percocet, Percodan, and Tylox.

26.   Because of its controlled-release property, OxyContin contains more active ingredient and needs to be taken less often (twice a day) than these other oxycodone-containing drugs. The OxyContin label originally approved by FDA indicated that the controlled-release characteristics of OxyContin were believed to reduce its potential for abuse.

27.   Defendants began marketing OxyContin in 10-, 20-, and 40-milligram controlled-release tablets.  Purdue later developed higher dosage forms, with 80- and 160-milligram controlled-release tablets, for use by patients who were already taking opioids and had developed tolerance for narcotics.

28. OxyContin sales and prescriptions grew rapidly following its market introduction in 1996. In 1997, OxyContin's sales and prescriptions began increasing significantly, and they continued to increase through 2002. In both 2001 and 2002, OxyContin's sales exceeded $1 billion, and prescriptions were over 7 million.

29. OxyContin's formulation as a controlled-release opioid that is twice as potent as morphine made it an attractive target for abuse and diversion.

30. The original label's safety warning advising patients not to crush the tablets because of the possible rapid release of a potentially toxic amount of oxycodone had the potential to alert abusers to possible methods for misuse.

31. The rapid growth in OxyContin sales increased the drug's availability in the marketplace and contributed to opportunities to obtain the drug illicitly.

32. Purdue has been cited at least twice by the FDA for OxyContin advertisements in medical journals that violated the FD&C Act.

33. Purdue promoted OxyContin in such manner as to downplay and minimize the potential for addiction and abuse, thus causing the great increase in usage and sales, fueled by

8

users' addiction and the difficulty of withdrawal from chronic
dependence on the narcotic.

34.   In particular, Defendants' employees were instructed
to and did make misleading and false promotional statements
about OxyContin to healthcare professionals that contradicted
the FDA-approved prescribing information for OxyContin and the
express warnings it contained about risks associated with the
medicine, in violation of defendant's purported policies about
promotional statements.  Generally, these misstatements
understated the risks posed by OxyContin of addiction, abuse,
withdrawal, and tolerance compared to other pain medications.

## CLASS ALLEGATIONS

35.   Plaintiffs bring this action as a class action under
Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure on
behalf of a class of all other Third-Party Payors, on behalf of
themselves and their beneficiaries or insureds, where the Funds
have offices in, or pay for prescriptions for patients within
the Commonwealth of Pennsylvania (excluding Defendants and
Defendants' respective subsidiaries and affiliates) who, from a
point in time to be determined in accordance with further
proceedings in this matter, and continuing through the present,
have purchased, or reimbursed their beneficiaries/insureds for

excessive, unnecessary, abusive, or diverted purchases of
OxyContin (the "Class").

36.   With as many as 7 million prescriptions per year,
every insurance carrier that provides prescription coverage and
many other Third-Party Payors, which together exceed a thousand
entities, covered the purchases of the medication by their
insureds and beneficiaries.   This action is brought as a class
action because joinder of the members of the Class is
impracticable.   Plaintiffs therefore bring this action on their
own behalf and as representatives of the Class.

37.   All putative Class members were and are similarly
affected by having purchased and reimbursed for purchases of
OxyContin and the relief sought herein is for the benefit of
Plaintiffs and members of the putative Class.   Common questions
of law or fact predominate over any questions that may affect
only individual members.   Questions of law or fact common to the
Class include:

       a.   whether Purdue misrepresented and understated the
   dangers of abuse and addiction from OxyContin;

       b.   whether Purdue's actions in promoting OxyContin
   violated the Pennsylvania Unfair Trade Practices and
   Consumer Protection Law;

10

c.  whether Pursue was unjustly enriched as a
consequence of unfair and unjust acts;

d.  whether Purdue breached implied warranties in
connection with the sale of OxyContin;

e.  whether Plaintiffs and members of the Class are
entitled to restitution and/or rescission for the costs and
expenses in connection with any purchases, reimbursements
or other costs related to their purchases and
reimbursements of OxyContin;

f.  whether Purdue's liability for its marketing of
OxyContin is limited by legal defenses which would apply to
all claims, such as federal preemption;

g.  whether Plaintiffs and members of the Class are
entitled to actual and compensatory damages related to
their purchases and reimbursements for purchases of
OxyContin.

38.  Plaintiffs will fairly and adequately protect the
interests of the Class.  Plaintiffs seek no relief which is
antagonistic to the interests of the Class.  In addition,
Plaintiffs are represented by counsel who are competent and
experienced in the prosecution of class actions.

39.  A class action is a fair and appropriate method for
the adjudication of the controversy, in that it will permit a

11

large number of claims to be resolved in a single forum
simultaneously, efficiently, and without the unnecessary
hardship that would result from the prosecution of numerous
individual actions and the duplication of discovery, effort,
expense and burden on the courts that such individual actions
would engender.  The benefits of proceeding as a class action,
including providing a method for obtaining redress for claims
that would not be practicable to pursue individually, outweigh
any difficulties that might be argued with regard to the
management of this class action.

     40.  Plaintiffs' claims are not only typical of, but also
are coextensive with, the claims of the class members.
Plaintiffs and all members of the class sustained damages in the
same manner as a result of Defendants' wrongful conduct.

     41.  Plaintiffs have an agreement with undersigned counsel
that provides for counsel to advance all reasonable and
necessary costs to litigate this action contingent on the
success of the action.

<u>COUNT I</u>
<u>PENNSYLVANIA UNFAIR TRADE PRACTICES</u>
<u>AND CONSUMER PROTECTION LAW</u>

42.  Plaintiffs incorporate the foregoing paragraphs by reference.

43.  At all relevant times there was in effect the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201-1 *et seq.* ("UTPCPL").

44.  The Funds and other class members purchased OxyContin on behalf of their members or retirees primarily for personal, family or household purposes within the meaning of 73 Pa. C.S.A. § 201-9.2.

45.  Section 3 of the UTPCPL, 73 Pa. Cons. Stat. § 201-3, provides, in pertinent part:

> Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by sub clauses (i) through (xxi) of clause (4) of section 2 of this act . . . are hereby declared unlawful.

46.  Section 2 of the UTPCPL, 73 Pa. Cons. Stat. § 201-2, provides, in pertinent part:

> "UNFAIR METHODS OF COMPETITION" and "UNFAIR OR DECEPTIVE ACTS OR PRACTICES" mean any one or more of the following:
>
> (v)  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that person has a sponsorship, approval, status, affiliation or connection that he does not have;
> * * *

13

        (vii)  Representing that goods or services are of
a particular standard, quality or grade or that goods
are of a particular style or model, if they are of
another;
        * * *
        (xiv)  Failing to comply with the terms of any
written guarantee or warranty given to the buyer at,
prior to or after a contract for the purchase of goods
or services is made;
        * * *
        (xxi)  Engaging in any other fraudulent or
deceptive conduct which creates a likelihood of
confusion or of misunderstanding.

        47.  Defendants misrepresented, concealed and/or omitted to

inform Plaintiffs and the Class and the physicians who

prescribed OxyContin of the adverse health effects which may

result from taking its product.  The material information

Defendants concealed from government agencies, physicians, and

Plaintiffs and members of the Class was the dangerous nature of

OxyContin in terms of its potential for causing addition,

dependency, and resulting likelihood of abuse and diversion for

non-medical use.

        48.  Said misrepresentations, concealment and/or omissions

were likely to deceive and/or in fact caused Plaintiffs and

other members of the Class to purchase or reimburse for

excessive purchases of OxyContin, particularly from the effects

of addiction and dependency.

        49.  Defendants intended that Plaintiffs and Class members

and physicians who prescribed OxyContin rely on their

14

misrepresentations, concealment and/or omissions as to the
description, quality and characteristics of OxyContin and on a
belief that OxyContin was beneficial, could be used in large
doses and for chronic pain conditions, and had less potential
for abuse than other powerful narcotics.

50. Defendants' actions, which were willful and wanton, or
at least reckless, constitute violations of the UTPCPL.

51. Plaintiffs and other members of the Class have been
damaged as a proximate result of Defendants' violations of the
UTPCPL and have suffered actual, ascertainable losses, in that
they paid for or reimbursed for purchases of OxyContin through
Defendants' violations of the UTPCPL

52. As a direct and proximate result of Defendants'
violations of the UTPCPL as set forth above, Plaintiff and the
members of the class have suffered an ascertainable loss of
money and are therefore entitled to relief, including damages,
under CPL § 201-9.2.

WHEREFORE, Plaintiffs, on behalf of themselves and all
others similarly situated, pray for:

a. an order certifying this matter as a class action
with Plaintiffs as Class representatives and designating
Plaintiffs' counsel as Class Counsel;

b. judgment in favor of Plaintiffs and the Class in excess of $75,000 for violation of the UTPCPL and damages as a result of the excessive purchases of OxyContin;

c. requiring Defendants to pay the reasonable attorneys' fees and costs of Plaintiffs and the Class; and

d. such other and further relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court, including treble damages and/or $100 per violation under the UTPCPL, whichever is greater.

## COUNT II
### RESCISSION/UNJUST ENRICHMENT

53. Plaintiffs incorporate the foregoing paragraphs by reference.

54. Defendants are the manufactures, sellers, and/or suppliers of the drug, OxyContin.

55. Defendants, through their wrongful conduct described above, have reaped enormous, illgotten profits from the sale of OxyContin. Defendants' profits would have been reduced, but for their wrongful and unlawful conduct.

56. Defendants have plead guilty to a federal criminal charge of misbranding, in connection with their wrongful promotion of OxyContin, and paid a fine of $470 million, which

16

only represents a fraction of the profits defendants have realized through the excessive sales of the drug.

57.   Accordingly, Defendants have been unjustly enriched by their unlawful and wrongful conduct. Defendants should not be allowed to retain the proceeds from the benefits conferred upon it by Plaintiffs and the Class.

58.   In equity and good conscience, it would be unjust and inequitable to permit Defendants to enrich themselves at Plaintiffs' and the Class' expense.   Therefore, Defendants must disgorge their unjustly acquired profits and other monetary benefits resulting from their unlawful conduct and provide restitution and/or rescission to Plaintiffs and the Class.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for:

a.   an order certifying this matter as a class action with Plaintiffs as Class representatives and designating Plaintiffs' counsel as Class Counsel;

b.   judgment in excess of $75,000 in favor of Plaintiffs and the Class in the amount of actual and compensatory damages;

c.   requiring Defendants to pay the reasonable attorneys' fees and costs of Plaintiffs and the Class; and

d.  such other and further relief as the nature of the
case may require or as may be determined to be just,
equitable, and proper by this Court.

## COUNT III
### BREACH OF IMPLIED WARRANTY

59.  Plaintiffs incorporate the foregoing paragraphs by
reference.

60.  Defendants, in the manufacture, marketing and sale of
OxyContin impliedly warranted to Plaintiffs and the Class that
said drug was fit for its particular ordinary purpose, that
being to provide safe and effective treatment for chronic pain,
and had lower risk of addiction and abuse.

61.  Defendants, their agents and their employees knew or
should have known that OxyContin causes negative health effects
and/or places persons at risk for negative health effects.

62.  Plaintiffs and members of the Class reasonably relied
upon the skill and judgment of Defendants as to whether
OxyContin was safe and fit for its intended use.

63.  Under the Uniform Commercial Code in Pennsylvania, and
in other states in which Defendants market and sell their
products, there exists an implied warranty of merchantability.
*See* 13 Pa. C.S.A. §§ 2314, 2315.

18

64.   Defendants breached this warranty of merchantability by selling OxyContin as being fit for its ordinary purpose when, in fact, it was not.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for:

   a.   an order certifying this matter as a class action with Plaintiffs as Class representatives and designating Plaintiffs' counsel as Class Counsel;

   b.   judgment in favor of Plaintiffs and the Class in an amount in excess of $75,000 compensatory and consequential damages;

   c.   requiring Defendants to pay the reasonable attorneys' fees and costs of Plaintiffs and the Class; and

   d.   such other and further relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

## COUNT IV
### NEGLIGENCE

65.   Plaintiffs incorporate the foregoing paragraphs by reference.

66.   Defendants owed the plaintiff Funds a duty to use reasonable care in the marketing of Oxycontin.  Specifically, Defendants owed the Plaintiffs a duty not to cause the Funds to

19

incur the cost of OxyContin for medically unnecessary uses, or for excessive usage caused by wrongful and misleading promotion. Further, Defendants owed the Plaintiffs a duty to accurately disclose known risks associated with their drug.

67. Defendants negligently, carelessly, recklessly, willfully and/or intentionally engaged in the following conduct in violation of its duties:

a. Marketing and/or promoting OxyContin for off label or non-medically necessary uses;

b. Improperly training and instructing their sales force to misrepresent the risks and drawbacks of the drug;

c. Continuing to deceptively promote, market and/or sell the drug well after they knew, or should have known, of the serious side effects and risks associated with the use of their drug; and

d. Allowing their drug to be used indiscriminately for uses beyond its respective indications.

68. Defendants' negligent, careless, reckless, willful and/or intentional conduct was the proximate cause of injuries and damages sustained by the Funds.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for:

a.  an order certifying this matter as a class action
with Plaintiffs as Class representatives and designating
Plaintiffs' counsel as Class Counsel;

b.  judgment in favor of Plaintiffs and the Class in
an amount in excess of $75,000 compensatory and
consequential damages;

c.  requiring Defendants to pay the reasonable
attorneys' fees and costs of Plaintiffs and the Class; and

d.  such other and further relief as the nature of the
case may require or as may be determined to be just,
equitable, and proper by this Court.

## COUNT V
## MISREPRESENTATION UNDER
## RESTATEMENT (SECOND) OF TORTS §402B

69.  Plaintiffs incorporate the foregoing paragraphs by
reference.

70.  Defendants, through their advertising, labeling, sales
representative contacts with physicians who treat the Funds'
participants, and otherwise, have misrepresented material facts
about their drug's risks, safety, and appropriateness as a
treatment for non-medically necessary uses.

21

71.  The Plaintiffs and physicians treating the Funds'
participants justifiably relied upon Defendants'
misrepresentations.

72.  The Defendants are subject to strict liability for the
damages resulting from their misrepresentations about the safety
and efficacy of their product, pursuant to Restatement (Second),
of Torts § 402B.

WHEREFORE, Plaintiffs, on behalf of themselves and all
others similarly situated, pray for:

        a. an order certifying this matter as a class action
    with Plaintiffs as Class representatives and designating
    Plaintiffs' counsel as Class Counsel;

        b. judgment in excess of $75,000 in favor of
    Plaintiffs and the Class in the amount of actual and
    compensatory damages;

        c. requiring Defendants to pay the reasonable
    attorneys' fees and costs of Plaintiffs and the Class; and

22

d.  such other and further relief as the nature of the

case may require or as may be determined to be just,

equitable, and proper by this Court.


Respectfully submitted,

COHEN, PLACITELLA & ROTH
A Professional Corporation


BY: _____

STEWART L. COHEN, ESQUIRE
WILLIAM D. MARVIN, ESQUIRE
PETER A. MUHIC, ESQUIRE
Attorney ID Nos. 25448/34265/73501

Two Commerce Square
2001 Market Street, Suite 2900
Philadelphia, PA   19103
(215) 567-3500
scohen@cprlaw.com
wmarvin@cprlaw.com
pmuhic@cprlaw.com


Of Counsel:

Deborah R. Willig, Esquire
Louise F. Pongracz, Esquire
Willig, Williams & Davidson
24th Floor
1845 Walnut Street
Philadelphia, PA 19103
215-656-3600
dwillig@wwdlaw.com
lpongracz@wwdlaw.com