## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, DISTRICT COUNCIL 47 HEALTH AND WELFARE FUND, PHILADELPHIA FIREFIGHTERS UNION LOCAL NO. 22 HEALTH & WELFARE FUND, and NATIONAL COUNCIL OF FIREMEN AND OILERS, LOCAL 1201 HEALTH AND WELFARE FUND, each on behalf of itself and all others similarly situated, <br><br>     Plaintiffs, <br><br>   v. <br><br>PURDUE PHARMA L.P., a Delaware Limited Partnership, and THE PURDUE FREDERICK COMPANY INC., a New York Corporation, <br>     Defendants | CIVIL ACTION <br> No. 07-8761-JGK |

### PLAINTIFFS' ANSWER TO PURDUE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

For the reasons stated in the attached Memorandum of Law, Plaintiffs submit that the Defendants have not met their heavy burden to establish, as a matter of law, that the Complaint fails to state any cause of action against them. Therefore, Plaintiffs request that this Court deny to Motion for Judgment on the Pleadings.

Respectfully submitted,

     MURRAY LAW FIRM


     _s/Justin Bloom_____
     JUSTIN BLOOM, ESQ.

650 Poydras Street, Suite 1100
New Orleans, Louisiana 70130
(917) 991-7593

STEWART L. COHEN
WILLIAM D. MARVIN
COHEN, PLACITELLA & ROTH, P.C.
PA Attorney ID 25448/34265
scohen@cprlaw.com / wmarvin@cprlaw.com
Two Commerce Square, Suite 2900
2001 Market St.
Philadelphia, PA  19103
(215) 567-3500
Counsel for Plaintiffs

STEVEN A. SCHWARTZ
DANIEL B. SCOTT
CHIMICLES & TIKELLIS LLP
PA Attorney I.D. 50579
stevenschwartz@chimicles.com
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
(610) 642-8500

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, DISTRICT COUNCIL 47 HEALTH AND WELFARE FUND, PHILADELPHIA FIREFIGHTERS UNION LOCAL NO. 22 HEALTH & WELFARE FUND, and NATIONAL COUNCIL OF FIREMEN AND OILERS, LOCAL 1201 HEALTH AND WELFARE FUND, each on behalf of itself and all others similarly situated, | CIVIL ACTION No. 07-8761-JGK |
| Plaintiffs, | |
| v. | |
| PURDUE PHARMA L.P., a Delaware Limited Partnership, and THE PURDUE FREDERICK COMPANY INC., a New York Corporation, Defendants | |

**PLAINTIFFS' MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................1

II.    LEGAL STANDARD OF REVIEW FOR MOTION FOR JUDGMENT ON
       PLEADINGS ADMITS COMPLAINT'S ALLEGATIONS ..............................3

III.   COMPLAINT STATES VALID CLAIM UNDER PENNSYLVANIA UNFAIR
       TRADE PRACTICES AND CONSUMER PROTECTION LAW (UTPCPL) ...............4

       A.    Plaintiffs Have Standing To Assert a UTPCPL Claim. .........................5

       B.    Plaintiffs' Purchases Are Covered by the UTPCPL ...............................7

       C.    Plaintiffs Sufficiently Pled the Elements of a UTPCPL Claim...........................9

             1.    Plaintiffs Sufficiently Pled a Claim Under the UTPCPL's Catch-all
                   Provision ...........................................................................9

             2.    Plaintiffs Are Entitled to a Presumption of Reliance ..............................13

       D.    Plaintiffs' UTPCPL and Unjust Enrichment Claims Are Not Preempted by
             the FDCA or FDA Regulations. ..........................................................14

IV.    COMPLAINT STATES VALID CLAIM FOR UNJUST ENRICHMENT ...................14

       A.    Purdue Distorts Role of Plaintiff Funds, As Payors for Prescription Benefit
             Plans, When It Denies that It Was Unjustly Enriched .........................................14

       B.    Plaintiffs Are Obligated To Pay for their Members' Prescriptions and
             Cannot Unilaterally Deny Payment; Therefore, the Fact that Defendants'
             Wrongdoing Continues To Cause Harm Is Irrelevant .........................................18

V.     COMPLAINT STATES VALID CLAIM FOR BREACH OF IMPLIED
       WARRANTY.................................................................................................19

       A.    Pennsylvania Law Does Hold Drug Manufacturer Liable for Implied
             Warranty....................................................................................................19

       B.    *Makripodis* Only Limits Implied Warranty Liability of Pharmacies ..................21

VI.    COMPLAINT STATES VALID CLAIM FOR NEGLIGENCE ...................................22

       A.    Pennsylvania Precedents Do Not Support the Economic Loss Doctrine
             Defense.......................................................................................................22

       B.    Economic Loss Doctrine Does Not Apply To Claims For Negligent
             Misrepresentation ...................................................................................23

VII.     COMPLAINT STATES VALID CLAIM FOR MISREPRESENTATION
         UNDER RESTATEMENT (SECOND), TORTS § 402B...............................................24

VIII.    AFFIRMATIVE DEFENSES DO NOT WARRANT JUDGMENT FOR
         DEFENDANTS.............................................................................................................25

         A.      Standing/Causation ...........................................................................................25

         B.      Statute of Limitations........................................................................................25

IX.      CONCLUSION ...............................................................................................................26

# TABLE OF AUTHORITIES

## Cases

*Air Products & Chemicals, Inc. v. Eaton Metal Prods. Co.*, 272 F.Supp.2d 482 (E.D. Pa. 2003)..........................................................................................................22

*Albertson v. Wyeth Inc.*, 63 Pa. D. & C. 4th 514 (Pa. Com. Pl. 2003)...........................................7

*Allegheny General Hospital v. Philip Morris, Inc.,* 228 F.3d 429 (3d Cir. 2000)........................17

*AmeriPro Search, Inc. v. Fleming Steel Co.*, 2001 Pa. Super. 325, 787 A.2d 988 (2001) ...........16

*Baker v. Family Credit Counseling Corp.*, 440 F.Supp.2d 392 (E.D. Pa. 2006) ...........................9

*Balderston v. Medtronic Sofamor Danek, Inc.*, 285 F.3d 238 (3d Cir. 2002),..........................5, 6

*Baldino v. Castagna*, 505 Pa. 239, 244-45, 478 A.2d 807, 810 (1984).......................................20

*Basile v. H&R Block*, 729 A.2d 574 (Pa. Super. 1999) ................................................................9

*Becker v. Chicago Title Ins. Co.*, No. 03-2292, 2004 U.S. Dist. LEXIS 1988, (E.D. Pa. Feb. 4, 2004) .............................................................................................................9

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (U.S. 2007) ......................................................2

*Bilt-Rite Contractors, Inc. v. Architectural Studio*, 581 Pa. 454, 866 A.2d 270 (2005).........23, 24

*Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 104 (3d Cir. 2001), *cert. denied*, 534 U.S. 1162 (2002) ................................................................................23

*Christopher v. First Mutual Corp.,* No. 05-01149, 2006 U.S. Dist LEXIS 2255, (E.D. Pa. Jan. 20, 2006)..........................................................................................................9, 11

*Cohen v. Chicago Title Ins. Co.*, No. 06-873, 2006 U.S. Dist. LEXIS 36689, (E.D. Pa. June 5, 2006)................................................................................................................9

*Colacicco v. Apotex, Inc.*, 432 F.Supp.2d 514 (E.D. Pa. 2006) .......................................7, 14, 21

*Commonwealth ex rel. Corbett v. Manson*, 903 A.2d 69 (Pa. Commw. 2006).......................9, 11

*Commonwealth v. Nickel*, 26 D. & C. 3d 115 (Mercer C.P. 1983) .............................................11

*Commonwealth v. Percudani*, 825 A.2d 743, 747 (Pa. Commw. 2003)..................................9, 11

*Commonwealth v. Pierce,* 579 A.2d 963 (Pa. Super. 1990).......................................................10

*Commonwealth v. TAP Pharmaceutical Products, Inc.*, 885 A.2d 1127 (Pa. Commw. 2005)................................................................................................5, 6, 15

*Consolidated Risk Services v. Auto. Dealers WC Self Ins. Trust*, 2007 U.S. Dist. LEXIS 22097 (N.D.N.Y. 2007)................................................................................23

*Craftmatic Sec. Litigation v. Kraftsow*, 890 F.2d 628 (3d Cir. 1989) ........................................12

*DiLucido v. Terminix Int'l, Inc.*, 676 A.2d 1237 (Pa. Super. 1996) .................................................6

*Drayton v. Pilgrim's Pride Corp.*, 2004 WL 765123 (E.D. Pa. March 31, 2004) ......................13

*Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604 (3d Cir. 1995)...........................23

*Ellenbogen v. PNC Bank, N.A.*, 731 A.2d 175 (Pa. Super. 1999) .................................................22

*Flores v. Shapiro & Kreisman*, 246 F.Supp.2d 427 (E.D. Pa. 2002) ......................................9, 11

*Foman v. Davis*, 371 U.S. 178 (1962) ......................................................................................12

*Hahn v. Richter, M.D.*, 543 Pa. 558 (Pa. 1996)..........................................................................7

*Hunt v. United States Tobacco Co.*, No. 06-1099, 2006 U.S. Dist. LEXIS 64960 (E.D. Pa. Sept. 11, 2006) ................................................................................................9, 11

*In re Cardizem CD Antitrust Litigation,* 105 F.Supp.2d 618 (D. Mich. 2000) ......................17, 18

*In re Lorazepam & Clorazepate Antitrust Litigation,* 295 F.Supp.2d 30, (D.D.C. 2003).........17

*In re McClellan's Estate,* 75 A.2d 595 (Pa. 1950) ....................................................................13

*In re Pa. Baycol Third-Party Payor Litigation*, 2005 Phila. Ct. Com. Pl. LEXIS 129 (C.P. Phila., 2005).............................................................................................16

*In re Patterson,* 263 B.R. 82 (Bankr. E.D. Pa. 2001) ................................................................9

*In re Rezulin Prods. Liab. Litigation*, 392 F.Supp.2d 597 (S.D.N.Y. 2005)................................7

*Incollingo v. Ewing*, 444 Pa. 263, 282 A.2d 206 (1971)............................................................20

*Int'l Union of Oper. Engrs. Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 929 A.2d 1076 (N.J. 2007)...............................................................................................7

*Kane & Son Profit Sharing Trust v. Marine Midland Bank*, No. 95-7058, 1996 U.S. Dist. LEXIS 3101 (E.D. Pa. Apr. 25, 1996)..........................................................5

*Katlin v. Tremoglie*, 43 Pa. D. & C. 4th 373 (Phila. C.P. 1999) .................................................13

*Koch v. Hicks (In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litigation)*, 241 F.R.D. 185 (S.D.N.Y. 2007) ..............................................................................3

*Lal v. Ameriquest Mortgage Co.*, 858 A.2d 119 (Pa. Super. 2004).................................6

*Leibowitz v. Ortho Pharmaceutical Corp.*, 224 Pa. Super. 418, 307 A.2d 449 (1973)..........19, 20

*Makripodis v. Merrell-Dow Pharmaceuticals, Inc.*, 361 Pa. Super. 589, 523 A.2d 374 (1987)....................................................................................19, 20, 21

*Menowitz v. Brown*, 991 F.2d 36 (2d Cir. 1993) ...................................................3, 14

*Nationwide Mutual Ins. Co. v. Brown*, 226 Fed. Appx. 153 (3d Cir. 2007) .....................4

*New York Life Ins. Co. v. Brandwene et ux.*, 172 A. 669 (Pa. 1934)...........................13

*PEBTF v. Zeneca, Inc.*, 499 F.3d 239 (3d Cir., 2007). .........................................14

*Peerless Wall and Window Coverings, Inc. v. Synchronics, Inc.*, 85 F.Supp.2d 519 (W.D. Pa. 2000) .....................................................................................13

*Prime Meats Inc. v. Yochim*, 422 Pa. Super. 460 (1993). .........................................9

*Schenck v. K.E. David, Ltd.*, 446 Pa. Super. 94, 666 A.2d 327 (1995)........................16

*Sexton v. PNC Bank*, 792 A.2d 602 (Pa. Super. 2002) ............................................9

*Shapiro v. UJB Fin. Corp.*, 964 F.2d 272 (3d Cir. 1992) ........................................12

*Sharp v. Kosmalski*, 40 N.Y.2d 119 (1976)........................................................15

*Soufflas v. Zimmer, Inc.*, 474 F.Supp.2d 737 (E.D. Pa. 2007) ..................................9

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris Inc., et al.*, 171 F.3d 912 (3d Cir. 1999 ....................................................................................3, 17

*Tommy L. Griffin Plumbing & Heating Co. v. Jordon, Jones & Goulding*, 320 S.C. 49, 463 S.E.2d 85 (S.C. 1995). ........................................................................23

*Toy v. Metropolitan Life Insurance Co.*, 928 A.2d 186, 188 n. 1 (Pa. 2007)..................9

*Valley Forge Towers S. Condo. v. Ron-Ike Foam Insulators, Inc.*, 393 Pa. Super. 339, 574 A.2d 641 (1990) .................................................................................5, 6

*Van Dusen v. Barrack*, 376 U.S. 612, 11 L. Ed. 2d 945, 84 S. Ct. 805 (1964).................3

*Wallace v. Pastore*, 742 A.2d 1090, (Pa. Super. 1999) ...........................................7

*Weiler v. SmithKline Beecham Corp.*, No. 2422, 53 Pa. D. & C. 4th 449 (Phila. C.P. Oct. 8, 2001) ..................................................................................................................... 11

*Weinberg v. Sun Co.*, 777 A.2d 442 (Pa. 2001) ........................................................... 9

*Zwiercan v. General Motors Corp.*, No. 3235, 58 Pa. D. & C. 4th 251 (Phila. C.P. Sept. 11, 2002) ................................................................................................................. 13

**Statutes**

28 U.S.C. § 1404(a) ........................................................................................................ 3

73 P.S. *§* 201-2(4)(i-xx) .............................................................................................. 10

73 P.S. § 201-2(4)(xxi) .......................................................................................... 9, 10

73 P.S. § 201-2, Historical and Statutory Notes ........................................................ 10

73 Pa.C.S. § 201-2(2) .................................................................................................... 5

73 Pa.C.S. § 201-9.2 ...................................................................................................... 5

Pa. Legis. Journal - Senate 1996, v. II ....................................................................... 10

**Other Authorities**

Restatement (Second), Torts § 388 ............................................................................. 20

Restatement (Second), Torts § 552 ............................................................................. 24

Restatement (Second), Torts §402 B .......................................................................... 24

Restatement (Third), Restitution and Unjust Enrichment, § 1 ................................... 15

## I.  INTRODUCTION

The Motion for Judgment on the Pleadings filed by the Purdue Defendants[1] raises a host of defenses.  This memorandum will respond by reviewing the applicable standard for a Motion for Judgment on the Pleadings, and then discuss each substantive Count of the Complaint, in the sequence pled there.  Finally, this Memorandum will show why the affirmative defenses of causation, pre-emption and statute of limitations cannot by sustained.

A fundamental fallacy runs throughout the various arguments in Purdue's Motion. That fallacy is the futile attempt to minimize the role played by Funds like Plaintiffs, as the Payors who bear the direct, intended financial burden for prescription drugs.  Plaintiffs and their class members are the source of the enormous financial windfalls reaped by Purdue, when it promoted OxyContin as a "blockbuster" new drug.  Therefore, the ultimate goal and purpose of Purdue's campaign of illegal overpromotion was to reach and obtain those funds.

The key facts alleged in the Complaint are that Purdue promoted its narcotic drug by illegal and improper means, intending to increase the sales of the drug, and succeeded in that campaign.  The result was that many millions of dollars were transferred from the Plaintiffs, as the ultimate source of the funds, to Purdue.  The Motion does not deny those facts; instead, it downplays that sequence of cause and effect as "indirect" or "attenuated" or even as something other than an injury.

Consistent with Rule 8(a)(2), the Complaint contains "a short and plain statement of the claim showing that the pleader is entitled to relief."[2]  The Plaintiff funds each provide medical

---

[1]      For consistency, this Memorandum will follow the convention employed by Defendants, referring to them collectively as "Purdue."

[2]      This Complaint was filed exactly a week before May 21, 2007, when the Supreme Court rendered

benefits for union members, and pay for members' prescriptions drugs through a plan administered by a Prescription Benefit Manager.  Complaint, ¶¶ 11-14.

Some of the key factual allegations about Defendants' conduct are these:

15. During the relevant time period, the Funds purchased OxyContin . . . The Funds were injured as a result of the unlawful conduct alleged herein, which cause[d] unnecessary and excessive usage of OxyContin. . . .

18. The Purdue Defendants have aggressively exploited their position, their superior knowledge of their product's characteristics and their knowledge that payors such as Plaintiffs relied on suppliers and sellers to comply with the governing regulation, by means of direct, illegal programs of promotion of use of non-medically necessary, non-indicated uses. . . .

28. OxyContin sales and prescriptions grew rapidly following its market introduction in 1996.  In 1997, OxyContin's sales and prescriptions began increasing significantly, and they continued to increase through 2002.  In both 2001 and 2002, OxyContin's sales exceeded $1 billion, and prescriptions were over 7 million.  . . .

33. Purdue promoted OxyContin in such manner as to downplay and minimize the potential for addiction and abuse, thus causing the great increase in usage and sales, fueled by users' addiction and the difficulty of withdrawal from chronic dependence on the narcotic.

34. In particular, Defendants' employees were instructed to and did make misleading and false promotional statements about OxyContin to healthcare professionals that contradicted the FDA-approved prescribing information for OxyContin and the express warnings it contained about risks associated with the medicine, in violation of defendant's purported policies about promotional statements.  Generally, these misstatements understated the risks posed by OxyContin of addiction, abuse, withdrawal, and tolerance compared to other pain medications.

---

its decision in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (U.S. 2007).  While Defendants invoke that decision now, they did not file a Motion for More Definite Pleading, but rather answered the Complaint.  Nevertheless, to the extent that *Twombly*'s heightened pleading standard applies to this case, outside the securities context, Plaintiffs submit that the straightforward allegations are sufficient to put the Defendants on notice of the charged conduct, to show that Defendants engaged in actionable misconduct, and to allow Defendants to meet the claims.  However, should the Court find the that *Twombly*'s requires even more detail, Plaintiffs request leave to amend.

The Complaint goes on to explain that by misrepresenting and concealing the dangers of OxyContin, Purdue caused excessive purchases of the drug, a result which it intended. Complaint, ¶¶ 47-49.

In addition to Purdue's Motion for Judgment on the Pleadings in this case, Purdue has also filed similar dispositive Motions in *New Mexico Fund v. Purdue, et al.*, No. 07-6916, which is subject to coordinated Case Management Orders. To the extent those Motions raise similar defenses and objections, the Briefs filed by the *New Mexico* plaintiff are incorporated by reference.

## II.    LEGAL STANDARD OF REVIEW FOR MOTION FOR JUDGMENT ON PLEADINGS ADMITS COMPLAINT'S ALLEGATIONS

Defendant Purdue has answered the Complaint; accordingly, its dispositive motion was filed under Fed.R.Civ.P. 12(c), as a Motion for Judgment on the Pleadings. That Motion invokes the same standard as a Motion to Dismiss under Rule 12(b)(6), admitting all the facts pleaded in the complaint. The court must "accept as true all factual allegations in the complaint" and a complaint should be dismissed under Rule 12 "only if it is certain that no relief can be granted under any set of facts which could be proved." *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris Inc., et al.*, 171 F.3d 912, 919 (3d Cir. 1999).[3] As the moving party, Defendant

---

[3]    This standard of review is well-settled, but the posture of this case may raise interesting choice of law questions. The case was begun in the Eastern District of Pennsylvania, asserting claims under Pennsylvania state law. On Defendants' motion, it was transferred to this Court pursuant to 28 U.S.C. § 1404(a). As such, this Court applies the same substantive state law as the transferor court would have. *Van Dusen v. Barrack*, 376 U.S. 612, 11 L. Ed. 2d 945, 84 S. Ct. 805 (1964) (transferee court applies the substantive state law, including choice-of-law rules, of the jurisdiction in which the action was filed).

However, for questions of federal law, the majority of courts, including the Court of Appeals for the Second Circuit, hold that the transferee court should follow the precedents of its own Circuit. *Menowitz v. Brown*, 991 F.2d 36 (2d Cir. 1993); *but see Koch v. Hicks (In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litigation)*, 241 F.R.D. 185 (S.D.N.Y. 2007) (questioning viability of *Menowitz* in MDL context, applying rules of transferor court to class certification motion).

Purdue has the burden to "clearly establish[] that no material issues of fact remain unresolved, and that the movant is entitled to a judgment as a matter of law." *Nationwide Mutual Ins. Co. v. Brown*, 226 Fed. Appx. 153, 155 (3d Cir. 2007). Thus, the Complaint's allegations are taken as true, even where they denied by defendants. Nonetheless, it is noteworthy that Purdue's Answer expressly and repeatedly admits that:

> prior to July 2001, some employees made, or told other employees to make, certain statements about OxyContin to some health-care professionals that were inconsistent with the package insert for OxyContin and the express warnings it contained about risks associated with the medicine, which statements violated written company policies requiring adherence to the prescribing information.

Purdue answer, ¶¶ 19, 20, passim.

This carefully worded admission may have been compelled by Purdue's guilty plea to criminal misbranding. Complaint, ¶ 56.


## III.    COMPLAINT STATES VALID CLAIM UNDER PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (UTPCPL)

Plaintiffs properly allege a UTPCPL claim arising from their **payment** for excessive prescriptions of OxyContin due to Defendants' aggressive marketing of OxyContin for off-label use through false and misleading statements in its promotional materials. Complaint, ¶ 34. Plaintiffs have standing and properly assert a UTPCPL claim arising out of their purchases of OxyContin on behalf of their members and retirees. Plaintiffs have sufficiently alleged, under the Federal Rules, each of the elements of the UTPCPL, particularly the catch-all provision. Moreover, Plaintiffs' UTPCPL and unjust enrichment claims are not preempted by the Food, Drug & Cosmetics Act (FDCA) or FDA regulations.

### A.    Plaintiffs Have Standing To Assert a UTPCPL Claim.

Defendants mischaracterize the facts and the law by arguing that Plaintiffs are commercial enterprises whose purchases are, *per se*, beyond the purview of the UTPCPL. Purdue Memorandum, 13-16.

Benefit trust funds, such as Plaintiffs, have standing to bring UTPCPL claims. *Commonwealth v. TAP Pharmaceutical Products, Inc.*, 885 A.2d 1127, 1142-43 (Pa. Commw. 2005). In *TAP,* the court expressly held that the Pennsylvania Employees Benefit Trust Fund ("PEBTF") was a "person"[4] under the UTPCPL, and that the drugs it had purchased for its beneficiaries were "ultimately used for a personal, family, or household purpose" as required by the statute. *Id.,* (citing *Valley Forge Towers S. Condo. v. Ron-Ike Foam Insulators, Inc.*, 393 Pa. Super. 339, 352, 574 A.2d 641 (1990) (holding that condominium association that purchased roofing membrane on behalf of condominium owners was a "person" and "purchaser" under the UTPCPL), *aff'd*, 529 Pa. 512 (1992)). The *TAP* Court declined follow *Balderston v. Medtronic Sofamor Danek, Inc.*, 285 F.3d 238, 242 (3d Cir. 2002), so as to preclude the PEBTF claim. *TAP*, 885 A.2d at 1142. *Accord, Kane & Son Profit Sharing Trust v. Marine Midland Bank*, No. 95-7058, 1996 U.S. Dist. LEXIS 3101, *10-11 (E.D. Pa. Apr. 25, 1996) (trust has UTPCPL claim because its purchase of securities on behalf of its beneficiaries was a purchase of goods for the beneficiaries' personal use).

---

[4]    The UTPCPL expressly defines "person" as including "corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entities," 73 Pa.C.S. § 201-2(2), whom have a private right of action when they make purchases under the express language of the act "primarily for personal, family, or household purposes," § 201-9.2. In light of the statute's express language, the Pennsylvania Legislature intended the UTPCPL to cover instances in which entities, such as Plaintiffs, paid for goods on behalf of their constituencies for personal, family, or household use. The language of the case law cited above signals that Plaintiffs acted within the scope of the UTPCPL as "persons" that "purchased" OxyContin on behalf of their members and retirees.

The *TAP* Court held that the statutory requirement that the purchase be "primarily for personal, family or household purposes" hinges solely on "the *purpose* of the purchase," not upon the type of product purchased or whether the purchaser is a business. *Id.,* (citing *Valley Forge Towers*, 393 Pa. Super. at 352). Defendants err in focusing on the *type of purchaser*, as opposed to the "purpose of the purchase." Purdue Memorandum, 13-16. Even if Plaintiffs were commercial enterprises, which they are not, they can still assert UTPCPL claims arising from their purchases of OxyContin. Plaintiffs are union health and welfare trust funds, which purchased OxyContin on behalf of their members and retirees. Complaint, ¶¶ 1-3. As representatives for their members and retirees, Plaintiffs purchased OxyContin for "personal, family or household purposes" of their members and retirees. *Id*. As such, they are entitled to raise UTPCPL claims stemming from Defendants' false and misleading promotional statements about the drug.

The cases relied upon by Defendants are distinguishable. In *Balderston*, the products at issue were not actually purchased by the plaintiff physician and were solely used by the plaintiff in his medical practice. 285 F.3d at 240-41; *accord Lal v. Ameriquest Mortgage Co.*, 858 A.2d 119, 123, 125 (Pa. Super. 2004) (plaintiff was not actual purchaser and property was bought for investment purposes). In *DiLucido v. Terminix Int'l, Inc.*, 676 A.2d 1237 (Pa. Super. 1996), the plaintiff property owner was barred from pursuing a UTPCPL claim for services performed by the defendant on her rental property that was not her own residence. In contrast, Plaintiffs in this case *paid for* OxyContin prescriptions, which were purchased *solely* for the personal and family use of Plaintiffs' members and retirees.[5]

---

[5]     The other two cases cited by Defendants are also distinguishable, and not just in the fact that they construed statutes of other states. The New Jersey ruling addressed class action certification issues, and did not dismiss the fund's claim on the merits. It only ruled that the methods of proof proposed by that plaintiff did not qualify for class treatment. *Int'l Union of Oper. Engrs. Local No. 68 Welfare Fund v.*

In light of the foregoing, and because the UTPCPL "must be liberally construed to effect the law's purpose of protecting consumers from unfair or deceptive business practices," the Court should deny Defendants' motion. *Wallace v. Pastore*, 742 A.2d 1090, 1093 (Pa. Super. 1999) (UTPCPL "must be liberally construed to effect the law's purpose of protecting consumers from unfair or deceptive business practices").

### B.  Plaintiffs' Purchases Are Covered by the UTPCPL

Defendants wrongly contend that only negligence claims may be brought for claims arising out of drug manufacturers' false and misleading statements that contradict warning labels approved by the FDA, and that the learned intermediary doctrine bars Plaintiffs' UTPCPL claim. Purdue Memorandum, 11-13.  Defendants rely exclusively on cases brought by individual plaintiffs involving personal injury/medical monitoring claims and/or concerning the inadequacy of warnings on product labels and package inserts.[6]  The defense in such personal injury cases, is that the learned intermediary doctrine cuts off liability for misrepresentations to the plaintiff patients, because a defendant pharmaceutical company satisfies its duty to warn when it gives full and accurate warnings of a drug's risks to the treating physician/prescriber.

Defendants ignore that the learned intermediary doctrine extends a corresponding burden on the drug manufacturer, when it excuses failure to warn the ultimate consumer of a dangerous drug.  That burden is to give accurate, proper information to the prescribers, so they may

---

*Merck & Co., Inc.*, 929 A.2d 1076, 1081 (N.J. 2007) (interpreting New Jersey statute).  The *Rezulin* case, *In re Rezulin Prods. Liab. Litigation*, 392 F.Supp.2d 597, 599 (S.D.N.Y. 2005) does not aid Purdue either. *Rezulin* construed the Louisiana Unfair Trade Practices and Consumer Protection Act, which is limited to direct *consumers* and business *competitors*, not entities such as benefit trust funds who purchase goods for the personal, family or household use of their beneficiaries.  *Id*. at 615.

[6]     *Hahn v. Richter, M.D.,* 543 Pa. 558, 560 (1996); *Colacicco v. Apotex, Inc.*, 432 F.Supp.2d 514, 518 (E.D. Pa. 2006); *Albertson v. Wyeth Inc.*, 63 Pa. D. & C. 4th 514, 526 (Pa. Com. Pl. 2003); and *Heindel v. Pfizer, Inc.*, 381 F.Supp.2d 364, 368-69 (D.N.J. 2004).

exercise their learning and make informed prescribing decisions. Clearly, Pennsylvania law recognizes that drug makers are liable when they violate that duty.

The learned intermediary doctrine does not apply in this case. *Heindel v. Pfizer, Inc.*, 381 F.Supp.2d 364, 384 (D.N.J. 2004). Plaintiffs do not put Defendants in the role of "absolute guarantor[s] of the anticipated results and effects" of OxyContin. *Albertson*, 63 Pa. D. & C. 4th at 526. Rather, they base their claims upon Defendants' promotion of this drug for off-label use through false and misleading promotional statements to physicians that were at odds with prescribing information approved by the FDA. Complaint, ¶ 34. Specifically, Plaintiffs allege that Defendants promoted OxyContin for "non-medically necessary, non-indicated uses" and made false and misleading statements to prescribers concerning the potential for use and addiction relative to other narcotic medications, to drive sales of the drug and oblige Plaintiffs and other putative class members to unnecessarily spend millions (if not billions) of dollars on OxyContin prescriptions. Complaint, ¶¶ 18, 19. As such, Plaintiffs' claims sound in fraud and deception. Moreover, Plaintiffs' damages are not contingent upon personal injury to OxyContin patients, and whether any of Defendants' false and misleading statements reached such patients is irrelevant. Defendants do not cite any analogous authority for the proposition that the learned intermediary doctrine absolves pharmaceutical companies from their statutory duties under the UTPCPL to third party payors.

This issue is discussed in further detail in connection with the unjust enrichment claim, *infra* Section IV, at 14.

C.    **Plaintiffs Sufficiently Pled the Elements of a UTPCPL Claim**

1.    **Plaintiffs Sufficiently Pled a Claim Under the UTPCPL's Catch-all Provision**

Defendants contend that in order to sustain a cause of action under the catch-all provision of the UTPCPL, 73 P.S. § 201-2(4)(xxi), a plaintiff must allege, with particularity, the common law elements of fraud, including reliance.  Purdue Memorandum, 21.  Defendants fail to cite a single case that squarely addresses this question.[7]  Moreover, they ignore the plethora of decisions from federal and Pennsylvania state courts that have held that a plaintiff need not allege or prove the common law elements of fraud to establish a UTPCPL claim for deceptive conduct.[8]

Prior to 1996, the catchall provision of the UTPCPL prohibited only "fraudulent" conduct, and it was clear that it was necessary to allege the elements of common law fraud in order to state a claim under the catchall.  *Prime Meats Inc. v. Yochim*, 422 Pa. Super. 460, 468 (1993).  However, in 1996, the catchall provision of the UTPCPL was amended to prohibit

---

[7]    The cases relied upon by Defendants are distinguishable.  Purdue Memorandum, 21.  *Baker v. Family Credit Counseling Corp.*, 440 F.Supp.2d 392, 412 (E.D. Pa. 2006) did not concern the catch-all provision of the UTPCPL.  *Toy v. Metropolitan Life Insurance Co.*, 928 A.2d 186, 188 n. 1 (Pa. 2007) solely addressed the pre-1996 version of the UTPCPL, and did not analyze the effects of the 1996 amendments.  *Soufflas v. Zimmer, Inc.*, 474 F.Supp.2d 737, 752 n. 12 (E.D. Pa. 2007) solely relied upon *Toy* and *Prime Meats, Inc., v. Yochim*, 619 A.2d 769, 773 (Pa. Super. 1993), which also concerned the earlier version of the UTPCPL.  *Sexton v. PNC Bank*, 792 A.2d 602, 607 (Pa. Super. 2002) solely relied upon *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001), which did not address the catch-all provision, and *Basile v. H&R Block*, 729 A.2d 574, 584 (Pa. Super. 1999), which did not address the effect of the 1996 amendment.  These cases are thereby distinguishable and not persuasive on the issue of whether reliance is required under the current, amended version of the catch-all provision.

[8]    *Commonwealth ex rel. Corbett v. Manson*, 903 A.2d 69, 74 (Pa. Commw. 2006) (citing *Commonwealth v. Percudani*, 825 A.2d 743, 747 (Pa. Commw. 2003); *Hunt v. United States Tobacco Co.*, No. 06-1099, 2006 U.S. Dist. LEXIS 64960, *6-7 (E.D. Pa. Sept. 11, 2006); *Cohen v. Chicago Title Ins. Co.*, No. 06-873, 2006 U.S. Dist. LEXIS 36689, *11 (E.D. Pa. June 5, 2006); *Christopher v. First Mutual Corp.*, No. 05-01149, 2006 U.S. Dist LEXIS 2255, *9-10 (E.D. Pa. Jan. 20, 2006); *Becker v. Chicago Title Ins. Co.*, No. 03-2292, 2004 U.S. Dist. LEXIS 1988, *42-43 (E.D. Pa. Feb. 4, 2004); *Flores v. Shapiro & Kreisman*, 246 F.Supp.2d 427, 432 (E.D. Pa. 2002); *In re Patterson*, 263 B.R. 82, 92 n.17 (Bankr. E.D. Pa. 2001).

engagement "in any other fraudulent *or deceptive conduct* which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2, Historical and Statutory Notes, at 20 (Purdon's Cumulative Annual Pocket Part 2006) (emphasis added).

Where the legislature has modified the language of a statute, the amendment "ordinarily indicates a change in the legislative intent." *Commonwealth v. Pierce,* 579 A.2d 963, 965 (Pa. Super. 1990) (citation omitted). The insertion of the phrase "or deceptive" in 1996 clarifies that *either* deceptive *or* fraudulent conduct constitutes a violation of the catchall provision, and that deceptive conduct is not the same as fraudulent conduct. This is reinforced by the legislaticve history of the amendment, which reflects the General Assembly's intent to expand the scope of the UTPCPL in light of restrictive court interpretations. Pa. Legis. Journal - Senate 1996, v. II, pp. 2427-28 (discussing general motivations for UTPCPL amendments).[9]

Several courts have addressed the effect of the amendments to the UTPCPL, and the better-reasoned cases hold that the addition of "deceptive" conduct to the catchall provision of the UTPCPL was intended to eliminate the requirement of proving the elements of common law fraud. The Commonwealth Court recently summarized its reasoning on this question:

> (1) the statute is to be liberally construed to effectuate the legislative goal of consumer protection; (2) the legislature's addition of the words "or deceptive" signals a less restrictive interpretation; and (3) maintaining the pre-1996 requirement [of proving the common law elements of fraud] would render the words "or deceptive" redundant and superfluous, contrary to the rules of statutory construction.

---

[9]    The UTPCPL lists twenty subsections describing specific unfair or deceptive acts or practices, before getting to the catch-all provision. 73 P.S. *§* 201-2(4)(i-xx). Certain subsections of section 201-2(4) may require proof of some common law fraud elements, such as reliance. However, not all claims under section 201-2(4) require such proof, and certainly not a claim for "deceptive" conduct under subsection (xxi).

*Commonwealth ex rel. Corbett v. Manson*, 903 A.2d 69, 74 (Pa. Commw. 2006) (citing *Percudani*, 825 A.2d at 747 (following *Flores*, 246 F.Supp.2d at 432, and other decisions predicting that the Supreme Court of Pennsylvania would hold that elements of common law fraud need not be pled)).  A significant number of decisions from the federal district courts have also held that the common law elements of fraud need not be pled to state a claim under the catch-all provision of the UTPCL.  *Hunt*, 2006 U.S. Dist. LEXIS 64960 at *6-7 ("Since the UTPCPL should be liberally construed, and in light of the 1996 amendment to the catch-all provision, this Court agrees with prior decisions holding that the catch-all provision does not require a plaintiff to prove all the elements of common law fraud"); *Christopher,* 2006 U.S. Dist LEXIS 2255 at *9-10 ("It is no longer necessary for a plaintiff to plead all of the elements of common law fraud to recover under the UTPCPL catchall provision"); *Flores*, 246 F.Supp.2d at 432.

Plaintiffs allege the necessary elements of "deceptive" conduct sufficient to state a claim under the catch-all provision and satisfy Rule 8.[10]  For a catch-all claim, a plaintiff need only allege that an act or practice is deceptive or unfair and has the capacity or tendency to deceive. *Commonwealth v. Nickel*, 26 D. & C. 3d 115, 120 (Mercer C.P. 1983); *see also Weiler v. SmithKline Beecham Corp.*, No. 2422, 53 Pa. D. & C. 4th 449, 456 (Phila. C.P. Oct. 8, 2001) ("Plaintiffs' claim for breach of the Catchall Provision is legally sufficient so long as the Complaint alleges 'deceptive conduct which creates a likelihood of confusion or of misunderstanding'").  The allegations of the Complaint meet these standards.[11]

---

[10]    Rule 9(b) does not apply to claims for deceptive conduct under the UTPCPL catch-all provision, because the elements of common law fraud need not be pled for such claims.  *Christopher*, 2006 U.S. Dist. LEXIS 2255 at *9 ("If a plaintiff alleges deceptive conduct under the UTPCPL, however, he need not meet the traditional heightened pleading standard").

[11]    Even if Plaintiffs are required to plead the elements of common law fraud under the catchall of the UTPCPL, they have done so here.  Plaintiffs sufficiently allege their UTPCPL claim with particularity, and those allegations are sufficient to satisfy the common law standards even assuming those standards apply to the catch-all provision of the UTPCPL (which they do not).  As the Third Circuit

Plaintiffs sufficiently alleged that Defendants aggressively marketed OxyContin through fraudulent and deceptive practices.  Specifically, Plaintiffs alleged that Defendants promoted OxyContin for non-medically necessary, non-indicated uses, specifically for treatment of cancer pain as well as noncancer pain conditions such as arthritis, injuries and chronic diseases. Complaint, ¶¶ 18, 20, 21.  Plaintiffs further alleged that Defendants marketed OxyContin in a manner that increased the potential for abuse and diversion of the medication for improper and illegal purposes, through false and misleading statements to prescribers treating Plaintiffs' members and retirees that OxyContin had less potential for abuse and addiction than other narcotic medications.  Complaint, ¶¶ 19, 20, 33.  Plaintiffs also alleged that Defendants' employees were instructed and did make promotional statements about OxyContin to physicians and other prescribers, which contradicted the FDA-approved prescribing information for the drug and the express warnings that it contained concerning risks associated with the drug.  Complaint, ¶ 34.  These promotional statements were in violation of Defendants' purported policies, and were misleading and false in that they understated the risks posed by OxyContin of addiction, abuse, withdrawal and tolerance relative to other pain medications.[12]

---

Court of Appeals stated in *Shapiro v. UJB Fin. Corp.*, "[d]espite these stringent requirements [of Rule 9(b)], the court should be 'sensitive' to the fact that application of the Rule prior to discovery 'may permit sophisticated defrauders to successfully conceal the details of their fraud.'"  964 F.2d 272, 284 (3d Cir. 1992) (citation omitted); *see also Craftmatic Sec. Litigation v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) ("Particularly in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs.").  The Complaint's allegations summarized above, drawing all inferences against the moving defendant, satisfy the elements of knowing misrepresentation, intention to deceive, and harm suffered from reliance.

[12]    If the Court nevertheless decides that additional facts should be pled, Plaintiffs request that they be granted leave to file an amended complaint to correct any such deficiencies.  Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend shall be freely given unless there is undue delay, bad faith, futility of the amendment or prejudice.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## 2.     Plaintiffs Are Entitled to a Presumption of Reliance

Even if Plaintiffs are required to allege reliance under the catch-all or the other cited provisions of the UTPCPL, they are entitled to a presumption of reliance.  Pennsylvania courts have carved out several situations in which reliance can be presumed.

Reliance can be presumed where, as here, a party makes material misrepresentations. *Zwiercan v. General Motors Corp.*, No. 3235, 58 Pa. D. & C. 4th 251, 264 (Phila. C.P. Sept. 11, 2002) (citing *New York Life Ins. Co. v. Brandwene et ux.,* 172 A. 669 (Pa. 1934)); *In re McClellan's Estate,* 75 A.2d 595, 598 (Pa. 1950).   Further, "[w]hen one would not have entered the transaction in the presence of full disclosure of a material fact or absent a misstatement of one, that person has obviously relied." *Peerless Wall and Window Coverings, Inc. v. Synchronics, Inc.,* 85 F.Supp.2d 519, 534 (W.D. Pa. 2000) (relying on *New York Life*).   In the class context, Pennsylvania courts have held that "when a duty to speak exists, reliance by the class plaintiffs is implicit and is established by operation of law." *Zwiercan*, 58 Pa. D. & C. 4th 251 at 264 (citing *Katlin v. Tremoglie,* 43 Pa. D. & C. 4th 373, 391 (Phila. C.P. 1999)).   The *Zwiercan* Court further expanded the presumption of reliance established in *Katlin* and *Peerless* to situations in which a plaintiff has shown that the defendant's silence regarding an alleged defect in a product was material to the plaintiff's decision to purchase the product. *Id.*

Defendants' aggressive touting of OxyContin's purported virtues gave rise to a duty to speak the entire truth with respect to its vices, not to mention a duty to avoid promoting it for off-label use. *Drayton v. Pilgrim's Pride Corp.,* 2004 WL 765123 at *7 (E.D. Pa. March 31, 2004). Defendants violated this duty, Plaintiffs' losses resulted, and causation should be presumed without individualized proof of reliance by each Plaintiff and class member.  As in *Zwiercan,* Plaintiffs have alleged that Defendants knowingly concealed material information and misrepresented the risks of OxyContin, and that prescribing and purchase decisions would have

been different but for Defendants' off-label promotion, misrepresentations and omissions. Under Pennsylvania law, reliance should be presumed for purposes of the statute and the Complaint therefore states a claim under the law.

### D.   Plaintiffs' UTPCPL and Unjust Enrichment Claims Are Not Preempted by the FDCA or FDA Regulations.

Defendants wrongly contend that Plaintiffs' UTPCPL and unjust enrichment claims are preempted by the Food, Drug & Cosmetics Act and FDA regulations because they impermissibly frustrate the regulatory scheme established by the Act and regulations. Purdue Memorandum, 21-22.[13] Plaintiffs incorporate the arguments raised in the Memorandum in Opposition to the Motion For Judgment on the Pleadings in *New Mexico Fund v. Purdue, et al.*, No. 07-6916, concerning this issue. For the reasons stated therein, Plaintiffs' claims are not barred on the basis of preemption.

### IV.   COMPLAINT STATES VALID CLAIM FOR UNJUST ENRICHMENT

### A.   Purdue Distorts Role of Plaintiff Funds, As Payors for Prescription Benefit Plans, When It Denies that It Was Unjustly Enriched

Defendant Purdue tries to evade liability for unjust enrichment by reworking its unfounded "remoteness" or standing arguments. Purdue Memorandum, 24-25. However, the Complaint shows that Purdue unjustly profited from wrongful, even criminal misconduct, it is

---

[13]    Purdue cites the recent split panel decision of the Court of Appeals for the Third Circuit in *PEBTF v. Zeneca, Inc.*, 499 F.3d 239 (3d Cir., 2007). In this rapidly evolving area of law, the Third Circuit's precedents are likely to be refined in a pending appeal from the *Colacicco* case. Moreover, as a result of the transfer of this case, federal issues are controlled by Second Circuit precedent, at least until the Supreme Court speaks. *Menowitz v. Brown*, 991 F.2d at 40. This rule makes particular sense where present case is coordinated with the *New Mexico* case, that was originally filed here. The nuances and complexity of pre-emption are challenging enough, without having to apply different, possibly conflicting rules from different Circuits.

difficult to imagine who was more directly injured, and better situated to claim disgorgement of the ill-gotten gains, than the very party that made the payments.

An unjust enrichment claim invokes the equitable principle that "[a] person who is unjustly enriched at the expense of another is required to make restitution to the other." Restatement (Third), Restitution and Unjust Enrichment, § 1.   Plaintiffs' claim for unjust enrichment arises from the allegations that "Defendants, through their wrongful conduct described above, have reaped enormous, illgotten profits from the sale of OxyContin. Defendants' profits would have been reduced, but for their wrongful and unlawful conduct." Complaint, ¶ 55.   Plaintiffs allege a benefit to Defendants at their expense in violation of fundamental principles of justice, equity, and good conscience, which Defendants must disgorge under the doctrine of unjust enrichment in Pennsylvania (and every other state).   *Sharp v. Kosmalski,* 40 N.Y.2d 119, 123 (1976):

> A person may be deemed to be unjustly enriched if he (or she) has received a benefit, the retention of which would be unjust (Restatement, Restitution, § 1, Comment a). . . .It was just for this type of case that there evolved equitable principles and remedies to prevent injustices. Equity still lives.

It would be "unjust" and "inequitable" to permit Defendants to retain "benefits" for the sale of OxyContin for off-label and other uses for which it lacked the advertised efficacy and safety.   In the *Commonwealth v. TAP* case, where state agencies asserted AWP claims against drug makers, the Commonwealth Court refused to dismiss unjust enrichment claims.   There, as here, the pharmaceutical company argued that the payors did not confer a direct benefit on them. In that case, the allegations of benefit asserted that Defendants achieved an increase in market share, which was held sufficient.   885 A.2d at 1137.   "Assuming the Commonwealth can establish such an effect, and assuming the Court were to conclude that the Defendants' retention of such a benefit without paying for its value is inequitable, under the doctrine of unjust

15

enrichment, whether the retention of the benefit was intentional or not, the Commonwealth would be entitled to relief." *Id.* at 1138.

Similarly, a Philadelphia trial court has allowed a third-party payor's unjust enrichment claim to go forward.

> The elements of unjust enrichment are "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant and acceptance and retention of such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *AmeriPro Search, Inc. v. Fleming Steel Co.*, 2001 Pa. Super. 325, 787 A.2d 988 (2001), *citing Schenck v. K.E. David, Ltd.*, 446 Pa. Super. 94, 666 A.2d 327, 328 (1995).

*In re Pa. Baycol Third-Party Payor Litigation*, 2005 Phila. Ct. Com. Pl. LEXIS 129, 21 (C.P. Phila., 2005) (granting certification of a nationwide class). In finding that this cause of action presented a common issue, the court framed it this way: "[e]ither it would be inequitable for defendants to retain the payments made to them by TPPs while refunding the deductible or co-pay for the same purchase or it is acceptable." *Id.* at 22.[14] In the context of the present case, the question is whether it is inequitable for Defendants to retain the payments made to them by TPPs, when they obtained those funds by means of an illegal promotional campaign that reached a level of criminality.

Defendants would have this Court adopt the untenable position that they were not unjustly enriched because it was just an incidental beneficiary when Plaintiff paid for OxyContin purchases. Defendants' Memorandum at 25. This argument ignores the fact that Defendants' wrongful overpromotion was precisely intended to maximize payments to Purdue, from prescription drug plans like Plaintiffs. There was nothing incidental or remote about the damage to the Plaintiff funds. Neither is Defendants' gross overstatement supported by the law.

---

[14]     Of course, in granting class certification, the *Baycol* court did not decide the claim on its merits. However, that court had previously granted a Motion for Partial Summary Judgment on liability, in favor of a named plaintiff, on both unjust enrichment and implied warranty theories. [Order, Exhibit A].

Defendants' reliance on *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 917-18 (3d Cir. 1999), *cert. den*ied, 528 U.S. 1105, 145 L. Ed. 2d 713, 120 S. Ct. 844 (2000) and *Allegheny General Hospital v. Philip Morris, Inc.,* 228 F.3d 429 (3d Cir. 2000) is misplaced. *Steamfitters* was brought by health funds against the tobacco industry, to recover medical costs caused by tobacco smoking. The *Allegheny Hospital* case sought reimbursement of treatment costs for uninsured patients for smoking-related illness.

Central to the court's holding in *Allegheny* is that the plaintiffs conferred a benefit on the **patients**, not on the defendants. "[T]he nonpaying patients got the benefit, not the [defendants]." *Id.* at 445. By the same token, the tobacco industry was enriched though sales of tobacco, not by provision of medical services. In contrast, here the benefit alleged in the Complaint — payments for OxyContin prescriptions — was conferred upon the Defendants. Complaint, ¶¶ 55-58. And the source of that money can be traced directly to the Plaintiffs' trust funds.

A drug maker's liability to payor funds for unjust enrichment is recognized in case law. *In re Lorazepam & Clorazepate Antitrust Litigation,* 295 F.Supp.2d 30, 50-51 (D.D.C. 2003) (finding that end payor plaintiffs adequately stated claim for unjust enrichment where they "absorbed millions of dollars in overcharges, which significantly increased Mylan's revenue and net earnings."); *In re Cardizem CD Antitrust Litigation,* 105 F.Supp.2d 618, 671 (D. Mich. 2000). In *Cardizem,* the defendants raised precisely the same arguments as Defendant, claiming that "Plaintiffs cannot state a common law claim for unjust enrichment unless they allege facts showing that they conferred a benefit directly upon each of the Defendants." *Id.* at 671. The *Cardizem* court rejected that defense, holding "[c]ontrary to Defendants' argument, there is no additional requirement that a benefit flow solely from Plaintiffs to Defendants. The courts do not define 'benefit' as narrowly as Defendants urge." *Id.* The "critical question" is not whether the benefit was "directly conferred" upon the defendant – although it clearly was in this case – but

17

whether the plaintiff "can show that his detriment and the defendant's benefit are related to and flow from the challenged conduct." *Id.*

Here, Plaintiffs have clearly alleged that they conferred a benefit on Defendants in the form of overpayments and increased profits, that Defendants accepted that benefit, and that it would be unjust under the circumstances for Defendants to retain that benefit. Plaintiffs have thus adequately stated claims for unjust enrichment, requiring denial of the Motion for Judgment on this Count.

### B. Plaintiffs Are Obligated To Pay for their Members' Prescriptions and Cannot Unilaterally Deny Payment; Therefore, the Fact that Defendants' Wrongdoing Continues To Cause Harm Is Irrelevant

Purdue assumes that the Plaintiff Funds should unilaterally have stopped paying for OxyContin, in order to assert any claims for reimbursement of past payments. Purdue Memorandum, 26. This premise is not a proper subject for a Rule 12 Motion for Judgment, because Purdue draws inferences in its own favor; it has no support in the record for its conclusion that Plaintiffs have not reacted to the scandal of Purdue's OxyContin promotion.

But there is no requirement that Plaintiffs stop paying for OxyContin. Plaintiffs do not claim that OxyContin is totally useless and should not be prescribed or purchased at all. Thus, it cannot be a necessary element of their cause of action, to cut off any and all funding for a drug that may be useful in some patients. These union-based funds have a duty to their members, just as health insurers have duties to their insureds. The Plaintiff funds should not be forced to deprive their members, perhaps suffering terminal cancer, of a last-resort medication for pain, before they can recover unwarranted expenditures caused by Purdue's criminal misbranding.

The defense premise is flawed, for the simple reason that the Funds' actions are driven by the decisions of their members' physicians. The named Plaintiffs provide benefits to members of

18

various unions, and those members are entitled to payment of prescription costs, subject to the terms of their collective bargaining agreements and benefit plans.

Therefore, to the extent Purdue continues to by unjustly enriched through its wrongful overpromotion of OxyContin, the Plaintiffs continue to be victimized by that conduct. Defendants' assumption that Plaintiffs could simply refuse to pay for OxyContin has no foundation in the record, and is contrary to the facts.


## V.    COMPLAINT STATES VALID CLAIM FOR BREACH OF IMPLIED WARRANTY

### A.    Pennsylvania Law Does Hold Drug Manufacturer Liable for Implied Warranty

Purdue does not challenge the sufficiency of the Complaint's averments to set forth the elements of a claim, that is, that OxyContin was not fit from its ordinary purposes as a safe, effective, non-addictive treatment for chronic pain.  Complaint, ¶ 60.  In particular, Purdue sold this narcotic while miminizing the risks of addiction and abuse, and promoted inappropriate uses, such as non-cancer pain, rather than providing the appropriate warnings and indications.  Purdue simply argues that as a prescription drug manufacturer, it is immune from such claims.  Purdue Memorandum,  22.

Purdue relies primarily on a Pennsylvania state court decision involving a pharmacy seller of prescription drugs.  However, Pennsylvania precedents distinguish between implied warranty claims against a drug manufacturer, as against a mere seller.  *Compare Leibowitz v. Ortho Pharmaceutical Corp.*, 224 Pa. Super. 418, 307 A.2d 449, 457 (1973) (opinion in support of affirmance) *with Makripodis v. Merrell-Dow Pharmaceuticals, Inc.*, 361 Pa. Super. 589, 523 A.2d 374, 376 (1987) (dismissing implied warranty claim against pharmacy).  The Pennsylvania Superior Court's opinion in *Leibowitz* emphasized that while a drug maker was not liable for

unknown side-effects, that exemption from warranty or strict liability theory was conditioned on proper marketing and warnings to the prescribing decision-makers. *Leibowitz*, 307 A.2d at 457. Pennsylvania law does recognize an implied warranty claim where the drug manufacturer has failed to adequately inform the prescribing doctor of the inherent risks of the drug. "[I]n an action against a drug manufacturer based upon inadequate warnings, the issue to be determined is whether the warning, if any, that was given to the prescribing physicians was proper and adequate." *Makripodis*, 361 Pa. Super. at 597 (citing *Baldino v. Castagna*, 505 Pa. 239, 244-45, 478 A.2d 807, 810 (1984)). Thus, the reasoning of *Makripodis* means that a prescription drug manufacturer does warranty that proper warnings and information have been given to the prescribing physician.

*Baldino*, in turn, relies on Pennsylvania's seminal case on drug manufacturer liability, *Incollingo v. Ewing*, 444 Pa. 263, 282 A.2d 206 (1971). Its holding was summarized by the *Baldino* court this way:

> We recognized a cause of action against drug manufacturers for the overpromotion of a drug that nullify otherwise adequate warnings.
>
> In *Incollingo* we held that, assuming proper preparation and warning, a manufacturer of drugs is not strictly liable for unfortunate consequences attending the use of otherwise useful and desirable products which are attended with a known but apparently reasonable risk. *Id.*, 444 Pa. at 288, 282 A.2d at 221. Rather, such a manufacturer is liable only if he fails to exercise reasonable care to inform those for whose use the article is supplied of the facts which make it likely to be dangerous. *Id.*, 444 Pa. at 288 n. 8, 282 A.2d at 220 n. 8 (citing Section 388 of the Restatement (Second) of Torts). We also held that a drug manufacturer can be held to have breached his duty of reasonable care by promoting its product in such a way as to nullify printed warnings. However, resolution of "whether or not the printed words of warning were in effect cancelled out and rendered meaningless in the light of the sales effort made by the detail men, were questions properly for the jury." *Id.*, 444 Pa. at 289, 282 A.2d at 220.

*Baldino*, 505 Pa. at 244.

### B. *Makripodis* Only Limits Implied Warranty Liability of Pharmacies

Purdue argues that *Makripodis* should be extended from pharmacies, to immunize drug makers. That argument ignores the rationale of *Makripodis,* that the duty to provide adequate information about a drug runs to the prescribing physician, and not from the immediate seller to the consumer. Thus, a pharmacist does not warrant that all side-effects had been disclosed, but **does** warrant "(1) that he has compounded the drug prescribed with due care, (2) in the strength and quantity prescribed," and the like. *Id.*

Thus, Pennsylvania case law does not reject implied warranty claims for prescription drugs; it only allocates the subject matter of those warranties between the pharmacy as immediate seller, and the manufacturer as the party with the duty to provide adequate instructions and warnings to make the product useful.

Defendants have cited two District Court decisions as precedent.[15] However, in the absence of guidance from any Pennsylvania state court or federal appellate court, those rulings are neither controlling nor persuasive. Those decisions did not follow the reasoning of the *Makripodis* case, to the effect that drug makers have a duty to include adequate warnings when promoting prescription drugs. Instead, they only quote the language about drugs being prescribed for particular organisms. That theory is inapposite, because the inadequate warnings in this case did, as intended by Purdue, bring about a huge increase in improper usage and sales of the drug.

---

[15] One case, from a New Jersey court applying Pennsylvania law, involved claims for economic loss brought by plaintiffs who did not suffer injury or side-effects of the Celebrex or Vioxx they took: "These plaintiffs would be hard pressed to claim that they did not get what they paid for." *Heindel v. Pfizer Inc.,* 381 F.Supp.2d 364, 379 (D.N.J. 2004). The other case, *Colacicco v. Apotex, Inc.,* 432 F.Supp.2d 514 (E.D. Pa. 2006), primarily addressed issues of pre-emption, and was recently argued on appeal before the Court of Appeals for the Third Circuit. (No. 06-3107, argued Dec. 10, 2007).

Moreover, the District Court in *Colacicco* ruled that the learned intermediary doctrine would not preclude the common law claims, because plaintiff "properly plead that Defendants failed to provide adequate warnings to his decedent's treating and/or prescribing physician." 432 F.Supp.2d at 546.

## VI.     COMPLAINT STATES VALID CLAIM FOR NEGLIGENCE

### A.   Pennsylvania Precedents Do Not Support the Economic Loss Doctrine Defense

Defendants' brief argument against the negligence claim relies entirely on the economic loss doctrine, as a complete defense to any cause of action for negligence.    Purdue Memorandum, 23.   As with the unjust enrichment claim, Purdue does not dispute that the Complaint sufficiently states the elements of a negligence claim.   Purdue cites two cases in support of its defense.

In the first cited case, Defendants quote a summary of the doctrine from a footnote, wherein the Pennsylvania Superior Court rejected that defense, stating: "[h]owever, where, as here, the claim is grounded upon a contractually imposed duty (one of express bailment), the economic loss doctrine, a feature of tort law, is irrelevant." *Ellenbogen v. PNC Bank, N.A.*, 731 A.2d 175, 188 n. 26 (Pa. Super. 1999).

The second case cited by Defendants is a federal court decision, *Air Products & Chemicals, Inc. v. Eaton Metal Prods. Co.*, 272 F.Supp.2d 482 (E.D. Pa. 2003).   However, that case did not decide the scope of the economic loss doctrine, because it found that the law of Utah applied.   Its discussion of Pennsylvania law was limited to identifying a conflict between the substantive rules of the states in question.   In particular, the court stated that it would not decide whether Pennsylvania would extend the economic loss doctrine to a defendant not in privity with the plaintiff, because it found that Pennsylvania law did not apply at all.   *Id.* at 490.   Thus, neither the *Air Products* decision, nor the dicta quoted by Defendants, supports the application of the economic loss doctrine to this case.

A more recent decision of the Pennsylvania Supreme Court squarely answers that question in Plaintiffs' favor.

> Pennsylvania has long recognized that purely economic losses are recoverable in a variety of tort actions including the professional malpractice actions noted by the South Carolina Supreme Court.  We agree with that court that a plaintiff is not barred from recovering economic losses simply because the action sounds in tort rather than contract law.  Here, Bilt-Rite had no contractual relationship with TAS; thus, recovery under a contract is not available to Bilt-Rite.  Having found that Bilt-Rite states a viable claim for negligent misrepresentation under [Restatement 2d, Torts] Section 552, and that privity is not a prerequisite for maintaining such an action, logic dictates that Bilt-Rite not be barred from recovering the damages it incurred, if proven.

*Bilt-Rite Contractors, Inc. v. Architectural Studio*, 581 Pa. 454, 483, 866 A.2d 270, 288 (2005),

(citing *Tommy L. Griffin Plumbing & Heating Co. v. Jordon, Jones & Goulding*, 320 S.C. 49,

463 S.E.2d 85 (S.C. 1995)).

### B.  Economic Loss Doctrine Does Not Apply To Claims For Negligent Misrepresentation

Even before the Pennsylvania Supreme Court settled the question in *Bilt-Rite*, federal

courts had found the economic loss doctrine could only applied to parties in privity.  *Bohler-*

*Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 104 (3d Cir. 2001), *cert. denied*, 534

U.S. 1162 (2002) (citing *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d

Cir. 1995)).  In *Bohler-Uddeholm,* the Court of Appeals found that such claims had their source

in broad social policies rather than a private agreement between the parties.  Therefore, the

economic loss doctrine was not a defense.  *Accord, Consolidated Risk Services v. Auto. Dealers*

*WC Self Ins. Trust*, 2007 U.S. Dist. LEXIS 22097 (N.D.N.Y. 2007) (under both Pennsylvania

and New York law, economic loss doctrine does not preclude tort counterclaims).

Purdue's scheme to maximize its profits at Plaintiffs' expense did not involve direct

contracts or dealing with the Plaintiffs.  Indeed, elsewhere in the Motion, Purdue frequently

argues that it is insulated from liability by the supposed remoteness of its relationship to the

Plaintiff funds' expenditures.  The manufacturer cannot, therefore, take refuge in a doctrine

designed to limit contracting parties to the terms of their bargain, when it has denied having any contractual obligations whatsoever.

In *Bilt-Rite*, the court adopted Restatement (Second), Torts § 552, and allowed a building contractor to claim damages from an architect for faulty specifications on a school construction project. The court recognized that such duty and liability was appropriate, where the reliance and damage of others was foreseeable. "Although an architect or design professional may not have a contractual relationship with the contractor who ultimately suffers economic damages in reliance upon the professional's design, in an instance such as the case *sub judice*, the professional is well aware that the design will be provided to and utilized by others." 581 Pa. at 481.

Similarly, Purdue knew, expected, and intended that the express information it pushed to prescribing physicians would be used to increase prescriptions for OxyContin, causing the Plaintiffs' expenditures.

## VII.  COMPLAINT STATES VALID CLAIM FOR MISREPRESENTATION UNDER RESTATEMENT (SECOND), TORTS § 402B

Purdue points out that the restatement provision for strict products liability for affirmative misrepresentations, Restatement (Second), Torts § 402B, includes the term "physical harm." The Complaint satisfies this standard. The Defendants' misrepresentations did engender reliance on the part of the Plaintiffs, their members, and particularly the physicians who prescribed OxyContin and thereby cause damages to the Plaintiff for the cost of that medication. The complaint furthermore alleges the damages sustained by the class included costs "from the effects of addiction and dependency." Complaint, ¶ 48. This physical impact and consequent

24

harmful effects on consumers, from ingestion of the narcotics which Purdue pushed, meets the physical harm element of the Restatement.

## VIII.  AFFIRMATIVE DEFENSES DO NOT WARRANT JUDGMENT FOR DEFENDANTS

### A.     Standing/Causation

Purdue asserts a lack-of-standing defense, premised on Article III of the Constitution. Purdue Memorandum, 5-11.  The basic idea of that argument recurs in other contexts, but the argument fails under any guise.

A detailed response on the standing issue is contained in the briefs filed by plaintiff in the *New Mexico* case, and those briefs are incorporated by reference.  In addition, as stated in the introduction to this Memorandum, the facts alleged in the complaint show that Purdue's illegal promotional scheme was intended to, and did, induce successive, unnecessary prescriptions of OxyContin, to the point that annual sales totaled over $1 Billion, and 7 million prescriptions. This money came from the Plaintiff funds and similarly situated Payors.  As the source of Purdue's windfall profits, Plaintiffs have standing to seek a refund.

### B.     Statute of Limitations

Finally, Purdue has raised a statute of limitations defense.  Purdue Memorandum, 26-30. Purdue identifies May 14, 2001, as the trigger date for Plaintiffs' statutory consumer fraud claims (absent any form of tolling).  However, Purdue offers evidence outside the Complaint, such as news articles and affidavits of its attorneys, to argue that some of its misdeeds were reported before that date.

As with the other affirmative defenses, Plaintiffs incorporates the Memorandum filed by the *New Mexico* plaintiff, to show why Purdue is not entitled to judgment on the pleadings, based on the limitations defense.  These reasons include Purdue's concealment of its criminal conduct, its denial of wrongdoing, and tolling from a different class action that was pending from 2001 through 2007.

In additional to all those reasons, by Purdue's own admission, its criminal misconduct continued at least through July 2001.  That continuing wrongful conduct, and resulting damages, are clearly within the six-year limitations period.  Thus, Purdue cannot establish that all of Plaintiffs' claims are untimely, even if all its legal arguments are accepted at face value, and all the reasons that the statute of limitations is not a defense are ignored.


## IX.    CONCLUSION

For the reasons stated above, this Court should deny the Purdue Defendants' Motion for Judgment on the Pleadings.

Respectfully submitted,

MURRAY LAW FIRM

  s/Justin Bloom_____
JUSTIN BLOOM, ESQ.

650 Poydras Street, Suite 1100
New Orleans, Louisiana 70130
(917) 991-7593

STEWART L. COHEN                        STEVEN A. SCHWARTZ
WILLIAM D. MARVIN                       DANIEL B. SCOTT
COHEN, PLACITELLA & ROTH, P.C.          CHIMICLES & TIKELLIS LLP
PA Attorney ID 25448/34265              PA Attorney I.D. 50579
scohen@cprlaw.com / wmarvin@cprlaw.com  stevenschwartz@chimicles.com
Two Commerce Square, Suite 2900         One Haverford Centre
2001 Market St.                         361 West Lancaster Avenue
Philadelphia, PA  19103                 Haverford, PA 19041
(215) 567-3500                          (610) 642-8500
Counsel for Plaintiffs

26

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, DISTRICT COUNCIL 47 HEALTH AND WELFARE FUND, PHILADELPHIA FIREFIGHTERS UNION LOCAL NO. 22 HEALTH & WELFARE FUND, and NATIONAL COUNCIL OF FIREMEN AND OILERS, LOCAL 1201 HEALTH AND WELFARE FUND, each on behalf of itself and all others similarly situated,<br><br>         Plaintiffs,<br><br>      v.<br><br>PURDUE PHARMA L.P., a Delaware Limited Partnership, and THE PURDUE FREDERICK COMPANY INC., a New York Corporation,<br>         Defendants | CIVIL ACTION<br>No. 07-8761-JGK |

**CERTIFICATE OF SERVICE**

WILLIAM D. MARVIN, attorney for Plaintiff, hereby certifies that as directed by Lead

Counsel, a true and correct copy of the foregoing was served upon counsel for Defendant, by

ECF filing and electronic delivery through email transmission, as follows:

Jason A. Snyderman, Esq., jsnyderman@akingump.com
Akin Gump Strauss Hauer & Feld LLP
One Commerce Square, 22nd Floor
2005 Market St.
Philadelphia, PA  19103

Donald I. Strauber, Esq., dstrauber@chadbourne.com
Mary Yelenick, Esq., myelenick@chadbourne.com
Phoebe Wilkinson, Esq., pwilkinson@chadbourne.com
Gretchen Werwaiss, Esq., gwerwaiss@chadbourne.com
Alexandra Nellos, Esq., anellos@chadbourne.com
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112

27

counsel for Defendants Purdue Pharma L.P. and The Purdue Frederick Company Inc.,

DATE:  __January 9, 2008__                    __/sWilliam Marvin_
                                              WILLIAM D. MARVIN
                                              Attorney for Plaintiff

COHEN, PLACITELLA & ROTH, P.C.
Attorney ID# 34265
Two Commerce Square
2001 Market St., Suite 2900
Philadelphia, PA  19103
(215) 567-3500